## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**ERVIN KENNEDY,**

      **Petitioner,**

**v.**                                **Case No.  3:12cv243/LC/CJK**

**MICHAEL D. CREWS,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

      Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 13).  Respondent filed an answer (doc. 27), submitting relevant portions of the state court record (doc. 28).  Petitioner replied.  (Doc. 36). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the amended petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by Amended Information filed in the Circuit Court for Escambia County, Florida, Case No. 07-3971, with the following offenses: Trafficking in Illegal Drugs – Heroin, Morphine, Opium (28 grams or more but less than 30 kilograms of Oxycodone) (Count 1); Trafficking in Illegal Drugs – Heroin, Morphine, Opium (4 grams or more but less than 14 grams of Hydrocodone) (Count 2); Possession of a Controlled Substance (Temazepam) (Count 3); Possession of a Controlled Substance (more than 20 grams of Cannabis) (Count 4) and Possession of a Firearm by a Convicted Felon (Count 5).  (Doc. 28, Ex. A, pp. 3-4).[1]  The offenses were alleged to have occurred on August 9, 2007, and arose out of an incident wherein Florida Department of Law Enforcement agents served a search warrant on petitioner's premises in Molino, Florida.  (Ex. A, pp. 3-4, 11-13).  On January 25, 2008, petitioner was charged with additional crimes in four separate cases filed in the Escambia County Circuit Court:

Case No. 08-108:  Trafficking in Illegal Drugs – Heroin, Morphine, Opium (14 grams or more but less than 28 grams) on May 8, 2007. (Ex. A, p. 7).

Case No. 08-109:  Trafficking in Illegal Drugs – Heroin, Morphine, Opium (14 grams or more but less than 28 grams) on July 11, 2007.  (Ex. A, p. 8).

Case No. 08-111:  Trafficking in Illegal Drugs – Heroin, Morphine, Opium (4 grams or more but less than 14 grams) on August 3, 2007. (Ex. A, p. 9).

Case No. 08-112:  Trafficking in Illegal Drugs – Heroin, Morphine, Opium (4

---

[1]All references to exhibits will be to those provided at Doc. 28, unless otherwise noted.

grams or more but less than 14 grams) on August 7, 2007. (Ex. A, p. 10).

The offenses arose out of sales petitioner allegedly made to an undercover informant, Donny Sorrells. (Ex. A, p. 10).

Petitioner proceeded to trial on Counts 1-4 of Case No. 07-3971, and was found guilty as charged of Counts 1, 2 and 4 and not guilty of Count 3 (the possession of Temazepam charge). (Ex. B, pp. 215-16; Ex. D, p. 362). Count 5 of Case No. 07-3971 was severed out, and petitioner later pled no contest to that charge. (Ex. B, pp. 222-233). Petitioner entered no contest pleas to the offenses charged in Case Nos. 08-108, 08-109, 08-111 and 08-112. (*Id*.). In exchange for petitioner's pleas, the State nolle prossed the charges in four other cases: Escambia County Circuit Court Case Nos. 08-105, 08-106, 08-107 and 08-110. (Ex. K, p. 111 n.2 and Attach. 1).

On August 14, 2008, petitioner was adjudicated guilty of Counts 1, 2, 4 and 5 of Case No. 07-3971, and sentenced to 25 years imprisonment with a 25-year mandatory minimum on Count 1; a concurrent term of 15 years imprisonment with a 3-year mandatory minimum on Count 2; a concurrent term of 5 years imprisonment on Count 4; and a concurrent term of 15 years imprisonment with a 3-year mandatory minimum on Count 5. (Ex. B, pp. 251-53). That same date, petitioner was adjudicated guilty of each charge in Case Nos. 08-108, 08-109, 08-111 and 08-112, and sentenced to 15 years imprisonment with a 15-year mandatory minimum in Case Nos. 08-108 and 08-109, and to 15 years imprisonment with a 3-year mandatory minimum in Case Nos. 08-111 and 08-112, with all sentences to run concurrent with each other and with the sentences imposed in Case No. 07-3971. (*Id*., pp. 253-54). Petitioner was adjudicated not guilty of Count 3 of Case No. 07-3971. (Ex. B, p. 217, 278). Judgment was rendered August 14, 2008. (*Id*., pp. 267-78). Petitioner's

judgment of conviction was affirmed on direct appeal on July 27, 2009, per curiam and without a written opinion. *Kennedy v. State*, 13 So. 3d 60 (Fla. 1st DCA 2009) (Table) (copy at Ex. G).

Petitioner then began a continuous stream of filings to overturn his convictions in state court.  On September 25, 2009, petitioner filed a petition for writ of habeas corpus in the Florida First District Court of Appeal ("First DCA"), alleging ineffective assistance of appellate counsel (counsel's failure to argue that the trial court committed fundamental error by prohibiting defense counsel from making a particular closing argument).  (Ex. S).  The First DCA denied the petition on the merits on November 9, 2009.  *Kennedy v. State*, 22 So. 3d 693 (Fla. 1st DCA 2009) (copy at Ex. T).

On November 18, 2009, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, (ex. H, pp. 1-17), which he later amended (*id*.,pp. 20-42).  The motion challenged only petitioner's conviction in Case No. 07-3971.  On February 16, 2010, the state circuit court struck both motions as facially insufficient, with leave to amend within thirty days.  (*Id*., pp 45-46).  On March 1, 2010, petitioner filed a second amended Rule 3.850 motion.  (Ex. H, pp. 47-69).  The circuit court denied relief on the merits in an order filed April 20, 2010.  (*Id*., pp. 70-140).  The First DCA per curiam affirmed on October 15, 2010, without a written opinion.  *Kennedy v. State*, 49 So. 3d 750 (Fla. 1st DCA 2010) (Table) (*see* Ex. I).  The mandate issued November 10, 2010.  (*Id*.).

While petitioner's first Rule 3.850 motion was pending, petitioner filed a Rule 3.850 motion on November 25, 2009, related to his pleas in Case Nos. 07-3971, 08-108, 08-109, 08-111 and 08-112 (hereinafter "the 2008 cases").  (Ex. J, pp. 1-28).

After striking petitioner's motion with leave to amend (*id.*, pp. 29-32) and petitioner's filing an amended motion dated April 5, 2010 (*id.*, pp. 33-62), the state circuit court granted a limited evidentiary hearing as to petitioner's first claim (that petitioner's plea was involuntary because he did not understand the trial rights he was giving up by entering his plea).  (*Id.*, p. 65).  On November 23, 2010, when the evidentiary hearing was set to commence, petitioner decided he would waive that claim.  (Ex. K, pp. 101-08).  On February 14, 2011, the circuit court entered an order denying relief, finding petitioner's first claim withdrawn and his second claim without merit.  (*Id.*, pp. 110-81).  The First DCA per curiam affirmed on May 19, 2011, without a written opinion.  *Kennedy v. State*, 66 So. 3d 943 (Fla. 1st DCA 2011) (Table) (*see* Ex. L). The mandate issued August 17, 2011.  (*Id.*).

Also while petitioner's first Rule 3.850 motion was pending, petitioner filed another "Motion for Postconviction Relief" on August 5, 2010, challenging his convictions in Case No. 07-3971, the 2008 cases, and the *nolle prossed* cases.  (Ex. K, pp. 66-79).  On August 12, 2010, the state circuit court struck the motion with leave to amend, noting that the appeal of the order on petitioner's first Rule 3.850 motion in Case No. 07-3791 was pending and the court was without jurisdiction to consider any new claims related to that case, and that petitioner's motion failed to state specifically to which cases his present postconviction claim applied.  (Ex. K, pp. 80-81).  Shortly thereafter petitioner retained counsel.  On November 1, 2010, petitioner, through counsel, filed a motion for postconviction relief under Rule 3.850 styled as being filed in all case numbers, including the 2007 case, the 2008 cases, and the previously *nolle prossed* cases.  (*Id.*, pp. 89-91).  On November 3, 2010, petitioner filed a counseled  "Third Amended Motion for Postconviction Relief," again styled

as being filed in all cases numbers.  (*Id.*, pp. 92-94).  The motion asserted one ground for relief – that the 25-year mandatory minimum should not apply to petitioner.  (*Id.*).  The circuit court's February 14, 2011 order, discussed above, denied relief on petitioner's November 1, 2010 motion and his November 3, 2010 motion on state procedural grounds.  (Ex. K, pp. 110-181).  The First DCA per curiam affirmed on May 19, 2011, without a written opinion.  *Kennedy v. State*, 66 So. 3d 943 (Fla. 1st DCA 2011) (Table) (*see* Ex. L).  The mandate issued August 17, 2011.  (*Id.*).

On May 26, 2011, petitioner filed a petition for writ of habeas corpus in the state circuit court to address belated postconviction claims.  (Ex. M, pp. 1-36).  The circuit court denied the motion on August 16, 2011.  (Ex. N, pp. 37-218).  Petitioner filed a notice of appeal (*id.*, p. 219), but his appeal was dismissed on August 29, 2012, pursuant to petitioner's motion for voluntary dismissal.  (Ex. O).

On September 14, 2011, petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. P).  The state circuit court denied the motion on October 4, 2011.  (Ex. Q).  The First DCA per curiam affirmed on February 7, 2012, without a written opinion.  *Kennedy v. State*, 93 So. 3d 1017 (Fla. 1st DCA 2012) (Table) (*see* Ex. R).  The mandate issued April 2, 2012.  (*Id.*).

Petitioner filed his original federal habeas petition in this court on May 23, 2012 (doc. 1, p. 1), which he later amended (doc. 13).  The amended petition raises eleven grounds for relief.  (Doc. 13).  Respondent asserts that each of petitioner's claims fails for one or more of the following reasons:  (1) the claim is not cognizable on federal habeas review; (2) the claim is procedurally defaulted; (3) the claim is without merit.  (Doc. 27).

## APPLICABLE LEGAL STANDARDS

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[2] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526

---

[2]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

   (A)  the applicant has exhausted the remedies available in the courts of the State; or

      (B) (i)  there is an absence of available State corrective process; or

       (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw*

*v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower*, 7 F.3d at 210. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

(d)  An application for a writ of habeas corpus on behalf of a

person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied"

the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See*

*Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

Ground One          "[T]rial court's error in denying petitioner's motion to suppress."
                    (Doc. 13, p. 6).

Petitioner claims the trial court erred in denying his motion to suppress. In support of this claim and to demonstrate exhaustion, petitioner "adopts, by reference

thereto, the argument and legal basis set-out relative to this claim by appellate Counsel," and cites to "Ground One" of his direct appeal brief. (Doc. 13, p. 6 (citing pages 22-26 of petitioner's initial brief on direct appeal)).  In Issue I of petitioner's direct appeal brief, petitioner argued that the trial court erred in denying his pre-trial motion to suppress statements, admissions, or confessions made by him to law enforcement on the grounds that the statements were not freely and voluntarily made. (Ex. E).  Respondent asserts that petitioner's claim is not cognizable on federal habeas review, pursuant to the long-standing principle enunciated in *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L. Ed. 2d 1067 (1976), that a state prisoner may not be granted federal habeas relief on a Fourth Amendment claim where the State has provided an opportunity for full and fair litigation of the claim. (Doc. 27, p. 18).

Review of petitioner's claim is not barred by *Stone v. Powell*.  In *Stone*, the United States Supreme Court identified the question before it as the following:

> whether state prisoners who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review may invoke their claim again on federal habeas corpus review.

428 U.S. at 489, 96 S. Ct. at 3050.  The Court made an exhaustive survey of Fourth Amendment law, specifically addressing its efforts to balance the right of the people to be free of illegal searches against the right of the people to punish guilty criminal offenders.  The Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 494, 96

S. Ct. at 3052 (footnotes omitted).

Petitioner's claim in state court and here is not grounded in the Fourth Amendment – petitioner does not claim his statements were tainted by an illegal arrest. Instead, the claim is grounded in the Fifth Amendment – petitioner claims his statements were made in violation of his right against self-incrimination. Petitioner's motion to suppress in state court sought suppression of "all written and oral statements made by Defendant on August 9, 2007 to the police or other agents of the State as well as all evidence recovered by the Police as a direct result of information obtained from the Defendant." (Ex. A, p. 68). Petitioner alleged the following facts in support of his motion: (1) on August 9, 2007, law enforcement officers arrested petitioner on outstanding warrants and executed a search warrant at petitioner's home, (2) petitioner was intoxicated and confused at the time he was taken into custody, (3) after petitioner was handcuffed, FDLE Agent Lawson advised petitioner of his constitutional rights by giving him the standard *Miranda* warning, (4) petitioner did not understand his constitutional rights or the *Miranda* warning because he was intoxicated and confused, (5) Agent Lawson questioned petitioner and petitioner made incriminating statements in the presence of Lawson and other law enforcement officers, (6) at no time did petitioner knowingly, voluntarily, or intelligently waive any of his constitutional rights, nor was petitioner adequately informed of those rights, (7) petitioner's statements, admissions, or confessions were not freely and voluntarily given, and admission of the statements (and any evidence derived therefrom) violated several of petitioner's constitutional rights, including the privilege against self-incrimination under the Fifth and Fourteenth Amendments. (Ex. A, pp. 68-70). A hearing on petitioner's motion to suppress was held on June

4, 2008.  (*Id.*, pp. 78-142).  The trial court denied the motion after hearing testimony from Agent Lawson and petitioner.  (*Id.*, p. 110).  The trial court made no explicit findings of fact and simply ruled:  "I'm going to deny the motion to suppress."  (*Id.*).  On direct appeal, petitioner argued as Issue I that the trial court erred in denying his motion to suppress because his suppression hearing testimony established that the circumstances surrounding his confession "improperly induced [him] to involuntarily waive his constitutional rights and to make incriminating statements that otherwise would not have been made."  (Ex. E).  The state appellate court affirmed petitioner's conviction without a written opinion.  *Kennedy v. State*, 13 So. 3d 60 (Fla. 1st DCA 2009) (Table) (copy at Ex. G)

The principles stated within *Stone* do not extend to petitioner's Fifth Amendment claim; rather, the voluntariness of petitioner's statements is subject to an independent federal determination.  *Withrow v. Williams*, 507 U.S. 680, 688-95, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993) (declining to extend *Stone* to claims under the Fifth and Fourteenth Amendments challenging the voluntariness of confessions made in response to custodial interrogation; the voluntariness of such statements is subject to federal habeas review).

A.     Clearly Established Federal Law

To determine whether a confession has been made "freely, voluntarily, and without compulsion or inducement of any sort," the court must examine the totality of the circumstances surrounding the confession.  *Withrow*, 507 U.S. at 688-89 (internal quotation and citations omitted).  This determination requires an inquiry, first, into whether the law enforcement officers informed the accused of his various constitutional rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602,

16 L. Ed. 2d 694 (1966), and if so, second, into whether, considering all of the surrounding circumstances, the statement was the product of the accused's free and rational choice. *Paxton v. Jarvis*, 735 F.2d 1306, 1308 (11th Cir. 1984).

In *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Supreme Court held that when an individual is in custody and subject to questioning, procedural safeguards must be employed to protect the privilege against self-incrimination. 384 U.S. at 444-45. Prior to questioning, the individual must be advised of 1) his right to remain silent, 2) that anything he says can be used against him in a court of law, 3) that he has the right to the presence of an attorney, and 4) if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. *Id*. at 444. While the individual may knowingly and intelligently waive these rights, unless such warnings and waiver thereof are demonstrated, no evidence obtained as a result of the interrogation may be used against the individual. *Id.* For the waiver to be valid, the relinquishment of the right must have been voluntary in the sense that it was the product of a free individual choice rather than intimidation, coercion, or deception. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). It also must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *Id*. A court may properly conclude that *Miranda* rights have been waived "[i]f the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension. . . ." *Moran*, 475 U.S. at 421 (citations omitted).

B.      Federal Review of State Court Decision

The state court's summary rejection of petitioner's claim is due deference under 28 U.S.C. § 2254(d). *See Richter*, 131 S. Ct. at 784-85; *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011).  Under § 2254(d)(1), the question is whether the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Because the state trial and appellate courts' decisions were summary in nature, petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for [its] decision." *Cullen*, 131 S. Ct. at 1402 (*quoting Richter*, 131 S. Ct. at 786).  The duty of a federal habeas court in this circumstance was restated by the Supreme Court in *Cullen*:  "[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id*., 131 S. Ct. at 1402 (*quoting Richter*, 131 S. Ct. at 786).

The state court reasonably could have rejected petitioner's claim on the ground that the evidence adduced at the suppression hearing and at trial demonstrated petitioner was not coerced, intoxicated or confused at the time he waived his constitutional rights and made his incriminating statements.  Agent Lawson testified at the suppression hearing that on August 9, 2007, he executed a search warrant at petitioner's residence.  (Ex. A, pp. 84-85).  Lawson was accompanied by seven to eight other officers.  (*Id*.).  Lawson and another agent knocked on the front door of the residence; petitioner opened it.  Petitioner was wearing a towel (having drawn a bath shortly before the search warrant was served).  (*Id*.).  Petitioner did not appear

to be intoxicated. (*Id*.). Petitioner did not indicate he had taken any prescription drugs or been drinking alcohol at that time. (*Id*.). Lawson read petitioner his constitutional rights on the front porch of petitioner's residence. (*Id*.). Petitioner appeared to understand those constitutional rights and waived them, agreeing to speak with Lawson. (*Id*.). Illegal drugs were found in petitioner's residence. (*Id*., pp. 84-85). Petitioner claimed ownership of all of the drugs found in the house and told Lawson he obtained some of the drugs from his deceased brother. (*Id*., p. 86). Petitioner told Lawson he liked to party and have fun and that he (petitioner) sold the drugs to his friends. (*Id*.). At no time during Lawson's conversation with petitioner did Lawson get the "impression" (the prosecutor's term) that petitioner did not understand why Lawson was there or that he (petitioner) was making incriminating statements. (*Id*., p. 87). On cross-examination, Lawson testified that petitioner had been "pretty messed up" (defense counsel's term) on the date forfeiture paperwork was served on him, but indicated the forfeiture paperwork was served on a different day than execution of the search warrant. (*Id*., p. 89). Lawson denied threatening petitioner with the arrest of his son, clarifying that there was no evidence tying petitioner's son or sister to any crime. Officers found a handgun and an empty pill bottle in the son's room, but no evidence that the sister had committed any crime. (*Id*., p. 90). Lawson also clarified that petitioner had put on blue jeans by the time he was questioned. (*Id*., p. 91). Agent Chris Webster was present during the interview. (*Id*.). The interview was not recorded. (*Id*., p. 91). Petitioner was handcuffed and not free to leave when he made the incriminating statements. (*Id*., p. 92).

Petitioner testified at the suppression hearing that when Lawson and the other agents arrived at his house, it was 11:30 or 12:00 in the evening. (*Id*., p. 94). After

petitioner had gotten off work (around 11:00 a.m.), he drank a few beers, went home, consumed some gin, got in the bathtub and was preparing to take a bath when the officers arrived. (*Id*., pp. 94-95). Petitioner had not taken any drugs that day. (*Id*., p. 95). Petitioner was wearing a towel when he answered the door. (*Id*.). After petitioner was handcuffed and taken to a bedroom, Lawson asked petitioner where the pills were and petitioner responded that they were in a middle drawer. (*Id*.). Lawson made petitioner sit for a while in his towel before Lawson allowed him to put something on. (*Id*., p. 96). When asked by defense counsel if he understood the *Miranda* warnings or if he was intoxicated and could not understand them, petitioner testified: "Well, I heard them but I didn't understand completely, but I kind of sort of understand but I didn't understand because I was more in shock of what was going on." (*Id*., p. 97). Petitioner asked the officers if he could have some alcohol before he left for jail. (*Id*.). Petitioner testified that later at the jail, during a conversation between petitioner, Lawson and defense counsel, Lawson made several comments about how drunk petitioner was when the search warrant was executed. (*Id*., p. 98). On cross-examination, petitioner testified that when he was interviewed he was in shock, intoxicated, and not fully aware of his constitutional rights. (*Id*., p. 100). Petitioner admitted that he was not so intoxicated that he did not know he did not have to answer the door when someone knocked on it. (*Id*., p. 101). On re-direct examination, petitioner stated he did not voluntarily waive his right to remain silent and that he had a question whether he understood those rights due to his level of intoxication that day. (*Id*., p. 108).

Agent Lawson's trial testimony was consistent with his suppression hearing testimony. Lawson testified at trial that prior to speaking with petitioner he advised petitioner of his *Miranda* rights, including his right to remain silent and to have an

attorney.  (Ex. C, p. 142).  This occurred on the front porch of petitioner's home.
(*Id*., p. 143).  Petitioner appeared to understand those rights, and agreed to speak
with Agent Lawson.  (*Id*., pp. 142-43).  Lawson, petitioner and Agent Chris Webster
moved into a bedroom where Lawson began interviewing petitioner.  (*Id*., p. 143).
During the interview, petitioner acknowledged that all of the narcotics in his
residence belonged to him.  (*Id*.).  Petitioner stated that he had gotten the Oxycodone
from his brother who was deceased, explaining that after his brother died he took
possession of the Oxycodone and occasionally sold it to friends.  (*Id*.).  Lawson
testified that petitioner also claimed ownership of marijuana and Hydrocodone
(found in a bottle with petitioner's sister's name on it) that was found in the
residence.  (*Id*., pp. 143-44).  Agent Lawson testified that he did not threaten to put
petitioner's son or sister in jail.  (*Id*., p. 172; Ex. D, p. 289).

Petitioner testified at trial that on the morning of August 9, 2007, he went
home from work early, consumed a couple of beers and then drank some gin.  (Ex.
D, p. 254).   After petitioner's constitutional warnings had been administered,
petitioner told Lawson and Webster that the drugs were all his because the agents
had threatened to send petitioner's son and sister to jail.  (*Id*., p. 255).  Petitioner
testified that he confessed to ownership of the drugs only to get rid of the officers
because he believed they would arrest his son and sister.  (*Id*.).

The state court reasonably could have credited Agent Lawson's testimony over
petitioner's testimony, and reasonably could have concluded that petitioner was not
intoxicated at the time Lawson advised him of his constitutional rights, that
petitioner was able to and did understand his constitutional rights and the
consequences of waiving them, that Lawson did not threaten to arrest petitioner's
sister or his son, that Lawson did not deprive petitioner of clothing, and that

petitioner's statements were the product of his free and rational choice.  The state courts' rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of clearly established Federal law.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two      "[T]rial court's error in allowing the state to introduce evidence of trafficking (Donny Sorels [sic]) on August 7, 2007, because this improperly became a feature of the trial."  (Doc. 13, p. 8).

Petitioner claims the trial court erred when it allowed the State to introduce evidence of his drug sale to confidential informant Donny Sorrells.  In support of this claim and to demonstrate exhaustion, petitioner "adopts, by reference thereto, the argument and legal basis set-out relative to this claim by appellate Counsel," and cites to "Ground Two" of his direct appeal brief.  (Doc. 13, p. 8 (citing pages 27-30 of petitioner's initial brief on direct appeal)).  In Issue II of petitioner's direct appeal brief, petitioner argued that the trial court erred when it allowed the State to introduce in its case-in-chief evidence of petitioner's sale of Hydrocodone to Donny Sorrells on August 7, 2007 – the sale that formed the basis of the charge in Case No. 2008-CF-112.  (Ex. E, pp. 27-30).  Appellate counsel argued that admission of the evidence "was improper because it became such a feature of the trial that it swallowed up completely the facts in Case No. 2007-CF-3971."  (*Id*. p. 27).  Respondent asserts that to the extent this claim invokes the United States Constitution, the claim is unexhausted because petitioner did not apprise the state court on direct appeal that his claim was one of constitutional dimension.  (Doc. 27, p. 19).  Respondent argues in the alternative that the claim is without merit.  (*Id*., pp. 20-21).

To the extent petitioner's claim can be liberally construed as raising a <u>federal constitutional</u> challenge to the admission of the drug sale evidence,[4] the claim is unexhausted because petitioner did not present the federal constitutional nature of his claim to the state appellate court on direct appeal.  In challenging the trial court's admission of the evidence, petitioner did not say, or even suggest, that his claim was a federal claim about due process or any other federal constitutional guarantee.  (Ex. E, pp. 27-30).  On direct appeal petitioner argued the trial court abused its discretion when it admitted evidence of the drug sale, because the evidence became a feature of the trial and its prejudicial effect outweighed its probative value.  (*Id.*, pp. 28-30).  Petitioner cited exclusively to state law, namely,  Fla. Stat. § 90.403; *Ballard v. State*, 899 So. 2d 1186 (Fla. 1st DCA 2005); *Canion v. State*, 793 So. 2d 80 (Fla. 4th DCA 2001); and *Bush v. State*, 690 So. 2d 670 (Fla. 1st DCA 1997).   None of the cases petitioner cited relied upon federal grounds, and nothing in petitioner's direct appeal argument would have alerted the state court to the presence of a federal claim about due process or the Fourteenth Amendment.  *See Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004) ("[A] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").   Thus, petitioner failed to exhaust his federal claim.  *See, e.g., Duncan v. Henry*, 513 U.S. at 365-66 115 S. Ct. at 888

---

[4]To the extent petitioner claims the trial court's admission of the evidence violates state law, he fails to state a claim on which federal habeas relief may be granted.  *See* 28 U.S.C. § 2254 (providing that a federal court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court <u>only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States</u>.") (emphasis added).

(holding that federal habeas petitioner failed to exhaust his claim that the state trial court's evidentiary ruling violated the Due Process Clause of the Fourteenth Amendment; petitioner's state law claim that the prejudicial effect of the evidence outweighed its probative value was only somewhat similar to, not the same as, petitioner's federal habeas claim that the evidence was so inflammatory as to prevent a fair trial); *Zeigler v. Crosby*, 345 F. 3d 1300, 1307 (11th Cir. 2003) (holding that federal habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution).

Petitioner is barred by state procedural rules from returning to state court to exhaust the federal constitutional nature of his claim.  *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").  Petitioner's claim is therefore considered procedurally defaulted for purposes of federal habeas review.  Petitioner has made none of the requisite showings to excuse his default.  Petitioner's procedural default bars federal habeas review of Ground Two.

Ground Three        "[T]rial judge improperly refused to recuse herself prior to trial."
                    (Doc. 13, p. 8).

Petitioner claims the trial judge improperly refused to recuse herself.  In support of this claim and to demonstrate exhaustion, petitioner "adopts, by reference thereto, the argument and legal basis set-out relative to this claim by appellate Counsel," and cites to "Ground Three" of his direct appeal brief.  (Doc. 13, p. 8 (citing to pages 30-32 of petitioner's initial brief on direct appeal)).  In Issue III of

petitioner's direct appeal brief, petitioner argued that the trial judge improperly refused to recuse herself and that had she done so, "perhaps the improper introduction of Sorrels' evidence (previous issue) under a different judge might never have occurred." (Ex. E, p. 32).  Respondent asserts that to the extent this claim invokes the United States Constitution, the claim is unexhausted because petitioner did not apprise the state court on direct appeal that his claim was one of constitutional dimension.  (Doc. 27, p. 21).  Respondent argues in the alternative that petitioner's claim is without merit.  (*Id*., pp. 21-22).

To the extent petitioner's claim can be liberally construed as raising a <u>federal constitutional</u> challenge to the trial judge's failure to recuse herself, the claim is unexhausted because petitioner did not present the federal constitutional nature of his claim to the state appellate court on direct appeal.  When petitioner challenged the trial judge's denial of petitioner's motion to disqualify, petitioner did not say, or even suggest, that his claim was a federal claim about due process or any other federal constitutional guarantee.  (Ex. E, pp. 30-32).  On direct appeal petitioner argued the trial judge should have recused herself because she had released Sorrells from jail to be a confidential informant against petitioner, and her denial of petitioner's request for reinstatement of bond demonstrated "that she was so prejudiced against appellant that she could not further hear the proceedings with an open mind." (*Id*., p. 31).  Petitioner cited exclusively to state decisional law, namely, *Doorbal v. State*, 983 So.2d 464 (Fla. 2008) (cited for the proposition that "whether a motion to disqualify a trial judge is timely filed is reviewed under the competent, substantial evidence standard."), and *Santa Catalina Townhomes, Inc. v. Merza*, 942 So.2d 462 (Fla. 4th DCA 2006) (cited for the proposition that Florida's ten-day time period for filing a motion to disqualify is not jurisdictional).  (Ex. E, pp. 30, 31).

Neither of the cases petitioner cited were decided on federal grounds, and nothing in petitioner's direct appeal argument would have alerted the state court to the presence of a federal claim about due process or the Fourteenth Amendment. *See Baldwin, supra*. Petitioner's failure to exhaust the federal law basis of his claim renders the claim procedurally defaulted, because petitioner is barred by state procedural rules from returning to state court to exhaust the federal constitutional nature of his claim. *See* Fla. R. Crim. P. 3.850(c). Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Three.

Ground Four    "[T]rial court's error in allowing FDLE special agent Lawson to testify that he and other agents searched a red Acura car parked on petitioner's premises and found just under $20,000 of currency in an igloo cooler." (Doc. 13, p. 11).

Petitioner claims the trial court erred in allowing the jury to hear evidence of money found in a car parked on petitioner's premises. In support of this claim and to demonstrate exhaustion, petitioner "adopts, by reference thereto, the argument and legal basis set-out relative to this claim by appellate Counsel," and cites to "Ground Four" of his direct appeal brief. (Doc. 13, p. 11 (citing pages 33-34 of petitioner's initial brief on direct appeal)). In Issue IV of petitioner's direct appeal brief, petitioner argued that the trial court abused her discretion when she allowed Agent Lawson to testify that just under $20,000 was found in a car parked on petitioner's premises. (Ex. E, pp. 33-34). Respondent asserts that to the extent this claim invokes the United States Constitution, the claim is unexhausted because petitioner did not apprise the state court on direct appeal that his claim raised an issue of federal constitutional dimension. (Doc. 27, p. 22). Respondent argues alternatively that the claim is without merit. (*Id*.).

To the extent petitioner's claim can be liberally construed as raising a <u>federal constitutional</u> challenge to the admission of Lawson's testimony concerning the money, the claim is unexhausted because petitioner did not present the federal constitutional nature of his claim to the state appellate court on direct appeal. When petitioner challenged the trial judge's allowing Lawson to testify to the cash found in the car, petitioner did not say, or even suggest, that his claim was a federal claim about due process or any other federal constitutional guarantee. (Ex. E, pp. 33-34). The basis of petitioner's argument on direct appeal was that Lawson's testimony concerning the money found in the car had no probative value and "there was a huge prejudicial effect from this evidence (because it implied that appellant was guilty of the charges for which he was on trial)." (*Id.*, p. 34). Petitioner cited exclusively to state law cases, namely, *San Martin v. State*, 717 So.2d 462 (Fla. 1988) (cited for the proposition that the standard of review was abuse of discretion), and *Jackson v. State*, 570 So.2d 1388 (Fla. 1st DCA 1990) (holding that it was error to admit evidence of cash seized from the defendant upon his arrest because the cash was not evidence of an inseparable crime and was not relevant to prove any element of the crime for which the defendant was charged; holding further that the erroneous admission of the cash was not harmless). (Ex. E, pp. 33, 34). Neither of the cases petitioner cited were decided on federal grounds, and nothing in petitioner's direct appeal argument would have alerted the state court to the presence of a federal claim about due process or the Fourteenth Amendment. *See Baldwin, supra.* Petitioner's failure to exhaust the federal law basis for his claim renders the claim procedurally defaulted on federal habeas review, because petitioner is barred by state procedural rules from returning to state court to exhaust the federal constitutional nature of his claim. *See* Fla. R. Crim. P. 3.850(c). Petitioner has made none of the requisite

showings to excuse his default.  Petitioner's procedural default bars federal habeas review of Ground Four.

| Ground Five | "Trial Counsel's Failure To Investigate, Interview, And/Or Depose Officer Chris Webber [sic] For Preparation In Support Of The May 29, 2008 Motion To Suppress Statements, Admissions, Or Confessions, And Call Officer Webber [sic] As A Witness."  (Doc. 13, p. 15). |

Petitioner claims trial counsel was ineffective for failing to investigate and call FDLE Agent Chris Webster as a witness at the suppression hearing.  Petitioner asserts he exhausted this claim by raising it in his second amended Rule 3.850 motion and appealing the denial thereof to the First DCA.  (*Id*.).  Respondent asserts petitioner is not entitled to relief, because the state court's rejection of his claim is consistent with clearly established Federal law.  (Doc. 27, pp. 22-23).

A.      Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims.   A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Strickland*, 466 U.S. at 687.   "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the

presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

    B.    Federal Review of State Court Decision

Petitioner raised this claim as "Ground/Issue (1)" of his second amended Rule 3.850 motion filed on March 1, 2010. (Ex. H, pp. 49-52). The state court denied relief without an evidentiary hearing in a written order filed April 20, 2010. (*Id.*, pp. 70-140). The court's written order discussed the two-pronged test for ineffective assistance of counsel claims articulated in *Strickland v. Washington*, (Ex. H, p. 71), and explained why petitioner's allegations failed to meet that standard, as follows:

> In his first claim, Defendant asserts that his counsel was ineffective for failing to investigate Florida Department of Law Enforcement (FDLE) agent Chris Webster as a potential witness, and for failing to call him to testify at the hearing on Defendant's motion to suppress. Had counsel called Agent Webster as a witness at the

suppression hearing, Defendant alleges that the result of his proceedings would have been different.

First, Defendant asserts that, if counsel had "investigated" Agent Webster, he "would have discovered that the defendant was intoxicated and confused at the time defendant was taken into custody," as Defendant alleged in his motion to suppress. Defendant asserts that agent Webster would have testified that "the defendant did in fact show signs of being intoxicated and confused at the time the incriminating and damaging statements were made by the Defendant during the search warrant."

"The rule of law seems to be well settled that the drunken condition of an accused when making a confession, unless such drunkenness goes to the extent of mania, does not affect the admissibility in evidence of such confession, but may affect its weight and credibility with the jury." Lawson v. State, 884 So. 2d 540, 547 (Fla. 4th DCA 2004) (citations omitted). Testimony that Defendant simply "showed signs" of being "intoxicated and confused," without more, would not have been sufficient to alter the results of the suppression hearing. Defendant points to no factually specific testimony which might have been offered by Agent Webster in support of his claim. Indeed, Defendant's testimony regarding his state of mind at the time of his incriminating statements, even if wholly believed by the Court, was not sufficient to support the suppression of the statements on this basis. For example, Defendant testified that he had a "few beers" before arriving home, and then "got me some gin and got in the tub and [was] fixing to take a bath." Defendant seemed to recall the events of the day clearly, and stated that he heard the Miranda warnings, but he "didn't understand completely," because he "was more in shock of what was going on." Defendant has failed to show that he was prejudiced by counsel's failure to call Agent Webster to testify to this point.

Secondly, Defendant asserts that Agent Webster would have refuted Agent Eli Lawson's claim that he (Lawson) had advised Defendant of his Miranda rights. Specifically, Defendant argues that Agent Webster "would have testified that Agent Eli Lawson did not

advise the defendant of his <u>Miranda</u> rights prior to Defendant making incriminating statements."

This portion of Defendant's claim is refuted by the record. Agent Lawson testified at the suppression hearing that he read Defendant his <u>Miranda</u> rights. Defendant also testified on his own behalf, and stated that he recalled Agent Lawson coming into his house, and acknowledged that he (Lawson) "gave it (<u>Miranda</u>) to me when he sat me down when I put my clothes on." Throughout the suppression hearing, Defendant did not deny that his <u>Miranda</u> rights were administered to him, but only maintained that he did not fully understand them.

Lastly, Defendant asserts that Agent Webster would have testified that "there was (sic) in fact insinuations easily inferred from the conversation between him (Webster) and the defendant that the defendant's son was going to be arrested based upon the pills found in defendant's son (sic) room," and that, contrary to Agent Lawson's testimony that only an empty pill bottle was found in the son's room, "illegal pills" and a handgun were actually found in that room.

To render a statement inadmissible, the threat or promise made to a defendant must constitute "outrageous behavior" that induces the confession and must also have a "causal nexus between the improper police conduct and the confession." <u>State v. Walter</u>, 970 So. 2d 848, 851 (Fla. 2d DCA 2007) (citations omitted). Defendant has failed to state specifically what "insinuations" were made by the FDLE agent(s). Defendant has also failed to state any facts which would support a belief that any "insinuations" by the agent(s) were "outrageous" or induced his confession. Furthermore, Defendant's own testimony calls into question whether the confession was induced by the alleged threats, as evidenced by the following exchange:

> Q. (State): All right, and you are aware of the fact that they found one pill bottle in his room and it didn't have any pills in it, did it?
> A. (Defendant): I have no idea, sir.

Q. You don't know?  So you at that point say well, I confess to everything and told them all the drugs were mine because they were going to take any (sic) sister and my son to jail.  That's why you confessed; is that what you are telling us?
A. No.

Defendant has failed to demonstrate that he was prejudiced by counsel's failure to investigate and call as a witness Agent Webster.  He is not entitled to relief on the basis of his first claim.

(Ex. H, pp. 72-75) (footnotes omitted).  The First DCA per curiam affirmed on October 15, 2010, without a written opinion.  *Kennedy v. State*, 49 So. 3d 750 (Fla. 1st DCA 2010) (Table) (*see* Ex. I).

The state court's decision was not contrary to clearly established federal law, because the state court identified and properly applied the *Strickland* standard.  *See, e.g., Jenkins v. Sec'y, Dep't of Corr.*, 520 F. App'x 871, 873 (11th Cir. 2013) ("[T]here is no merit to [petitioner's] argument that the state court's decision was contrary to clearly established federal law because the state court utilized the *Strickland* standard.").  There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.  The only question is whether the state court's application of *Strickland* was objectively unreasonable.

Because the First DCA's decision was summary in nature, petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for [its] decision."  *Cullen*, 131 S. Ct. at 1402 (*quoting Richter*, 131 S. Ct. at 786).  Petitioner fails to meet that high threshold.  The state circuit court's order, which is the only reasoned state opinion addressing petitioner's claim, rejected petitioner's claim on *Strickland*'s prejudice prong.  The

undersigned has carefully reviewed the state court record, including the attachments to the circuit court's order.  The state court's factual findings are amply supported by the record and are presumed correct.  Petitioner has not rebutted those findings with clear and convincing evidence to the contrary.  Based on the state court's findings, it was not unreasonable for the court to conclude that petitioner failed to establish Agent Webster would have testified as petitioner suggests, and further failed to establish a reasonable probability Webster's proposed testimony would have altered the outcome of the suppression hearing.

The state court's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court.  Petitioner is not entitled to federal habeas relief on Ground Five.

| Ground Six | "Trial Counsel's Failure To Investigate, Interview, And/Or Depose Officer Chris Webber [sic] For Discovering that Petitioner Was Never Lawfully/Properly Mirandaized [sic] Prior Making The Damaging Statements In Which Officer Eli Lawson Testified To During The State Case Before The Jury; Investigate, Depose, And Thereafter, Motion For A Suppression Of The Unlawfully Obtained Statements."  (Doc. 13, p. 17). |

Petitioner claims trial counsel was ineffective for failing to develop (investigate and depose) Agent Webster's testimony on the issue of whether petitioner received *Miranda* warnings prior to giving his incriminating statements to Agent Lawson. (Doc. 13, p. 17).  Petitioner asserts he exhausted this claim by raising it in his second amended Rule 3.850 motion and appealing the denial thereof to the First DCA.  (*Id*.). Respondent asserts that petitioner is not entitled to relief, because the state court's rejection of his claim is consistent with clearly established federal law.  (Doc. 27, pp. 23-24).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, discussed above.

B.    Federal Review of State Court Decision

Petitioner raised this claim as "Ground/Issue (2)" of his second amended Rule 3.850 motion filed on March 1, 2010.  (Ex. H, pp. 52-55).  The state court denied relief without an evidentiary hearing in its written order filed April 20, 2010.  As indicated above, the state court's order discussed the two-pronged test for ineffective assistance of counsel claims articulated in *Strickland v. Washington*. (*Id.*, p. 71).  The court rejected petitioner's claim on the following grounds:

> In his second claim, Defendant asserts that counsel was ineffective for failing to depose Agent Webster and discover that "Defendant was never lawfully/properly Mirandized" prior to making incriminating statements.  Defendant asserts that "Agent Chris Webster allegedly advised the defendant of his 'Miranda rights' prior to the defendant making any statements," but that if counsel had properly investigated, counsel would have discovered that "Agent Chris Webster never informed the defendant that he had a right to have counsel present during questioning," and that Chris Webster "never provided the defendant with a 'clear' understanding of his Miranda rights."
>
> At no time during the progression of the case was it suggested that Agent Webster advised Defendant of his <u>Miranda</u> rights.  As previously noted, Agent Lawson testified that he advised Defendant of his rights, and Defendant acknowledged that he had.   Defendant makes no assertion that the warnings given by Agent Lawson were defective, and thus any alleged deficiencies in my <u>Miranda</u> warnings given by Agent Webster are insufficient to demonstrate prejudice.  Defendant is not entitled to relief on this basis.

(Ex. H, p. 75).  The First DCA per curiam affirmed on October 15, 2010, without a written opinion.  *Kennedy v. State*, 49 So. 3d 750 (Fla. 1st DCA 2010) (Table) (*see*

Ex. I).

The state court's factual findings are amply supported by the record and are presumed correct.  Petitioner has not rebutted those findings with clear and convincing evidence to the contrary.  Based on the state court's findings, it was not unreasonable for the court to conclude that petitioner failed to establish prejudice for counsel's alleged failure to develop Agent Webster's testimony concerning Webster's giving (or failing to give) petitioner his *Miranda* warnings, because that evidence would not have changed the outcome of the suppression hearing.

The state court's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court.  Petitioner is not entitled to federal habeas relief on Ground Six.

| Ground Seven | "Trial Counsel's Failure To Move For Suppression Of All Evidence, (Items, Property, U.S. Currency, Drugs, Firearms, Pills, Etc; Et Al) That Was Seized Pursuant To A Search Warrant Predicated Upon An Affidavit That Contained No Specific Facts/Information Linking The Petitioner To Said Items, And/Or That Said Items Are Kept Ion [sic] Or On Petitioner's Premises And It's [sic] Cartilage[5][sic]."  (Doc. 13, p. 19). |

Petitioner claims trial counsel was ineffective for failing to move to suppress the evidence seized during execution of the search warrant on August 9, 2007, on the grounds that the affidavit supporting the search warrant was insufficient to establish probable cause.  (Doc. 13, p. 19).  Petitioner asserts he exhausted this claim by raising it in his second amended Rule 3.850 motion and appealing the denial thereof to the

---

[5]The "curtilage" is the area "immediately surrounding and associated with the home. . ." and is considered "part of the home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180 (1984).

First DCA. (*Id.*). Respondent asserts that petitioner is not entitled to relief, because the state court's rejection of his claim is consistent with clearly established federal law. (Doc. 27, pp. 24-25).

A.   Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, discussed above.

B.   Federal Review of State Court Decision

Petitioner raised this claim as "Ground/Issue (3)" in his second amended Rule 3.850 motion filed on March 1, 2010. (Ex. H, pp. 56-60).  The state court denied relief without an evidentiary hearing in its April 20, 2010 order.  The court discussed the two-pronged test for ineffective assistance of counsel claims articulated in *Strickland v. Washington*, (Ex. H, p. 71), and explained why petitioner's allegations failed to meet that standard, as follows:

> In his third ground, Defendant alleges that his counsel was ineffective for failing to move for suppression of all items found during the execution of the search warrant.  Defendant asserts that the affidavit on which the search warrant was based "contained no specific facts/information linking the defendant to said items, and/or that said items are kept in or on Defendant's premises and its curtilage." Defendant states that the affidavit consisted solely of information showing that he "simply sold and/or sell Loritabs (sic). . ." and thus "contained no specific statement of facts linking the defendant to any of the items listed in the affidavit for seizing, except the Loritabs (sic) – nor – any specific stated facts to support agent Lawson['s] belief that items other than Loritabs is (sic) kept in or on the defendant['s] premises and its curtilage."
>
> Defendant has failed to demonstrates that counsel was ineffective for failing to move to suppress evidence on the basis of any alleged deficiencies in the search warrant affidavit.  The case of <u>State v. Wiley</u>

697 So. 2d 1294 (Fla. 1st DCA 1997) is instructive.  In <u>Wiley</u>:

> [T]he affidavit forming the basis for issuance of the search warrant alleged that a confidential informant had purchased a quarter ounce of marijuana from Wiley in a controlled buy.  The search warrant provided a broad description of items for which the officers could search, but did not specifically include firearms and a number of other items.  The trial court denied the motion to suppress as it related to the contraband drugs, but suppressed all other items seized, including the following: "owe sheets" (ledger sheets) contained in a briefcase (with Wiley's name thereon), a set of scales, a set of "straw" scales, a plate containing baking soda, and a handgun.  Wiley conceded at the suppression hearing that there was probable cause to support the search for controlled substances, but argued that all items, except the contraband drugs, should be suppressed because these items would have been relevant only to a charge of drug trafficking, as opposed to mere sale or distribution of drugs.  Wiley argues that the search warrant authorized a general (and thus illegal) search because the probable cause facts recited only a quarter ounce of cannabis and failed to adequately specify other items found in the search; that, because the warrant was overbroad in part, the entire warrant was defective.

<u>Id</u>. at 1294-1295.

The appellate court overruled the <u>Wiley</u> trial court, observing that "[a]s a general rule, American courts have permitted a warrant to include some items not specifically addressed in the affidavit if the overall circumstances of the crime are sufficiently established and the items added are reasonably likely to have evidentiary value with regard to the type of crime," and concluding that it "would appear reasonable that items such as 'owe' sheets, a briefcase, scales, and similar items would be relevant to the prosecution of Wiley for offenses which include possession with intent to distribute." <u>Id.</u> at 1295.  Defendant has failed

to show that any additional items seized during the search of his home were not relevant to the crimes alleged.  See also State v. Eldridge, 814 So. 2d 1138, 1141 (Fla. 1st DCA 2002) ("If the object of the warrant is to seize specific items of property, those items must be described in detail.  In contrast, if the object of the warrant is not to obtain specific items of property, but rather to obtain all property of a certain character, it is not necessary to describe a particular article of property.  In such a case, the search warrant may simply define the nature of the property to be seized").  Further, the officers executing a search pursuant to a search warrant are not required to overlook contraband within plain view.  See Rimmer v. State, 825 So. 2d 304, 313 (Fla. 2002) ("The United States Supreme Court [held] that a warrantless seizure of evidence found in plain view is admissible if at the time of the search:  (1) the seizing officer was legitimately in a place where the object could be plainly viewed;  (2) the incriminating nature of the seized object was immediately apparent to the police officer; and (3) the seizing officer had a lawful right of access to the object itself.  With regard to the third requirement, the court explained that the seizing officer may lawfully seize an incriminating object if the officer has probable cause prior to the seizure and it was discovered within the parameters of a validly executed search warrant or one of the exceptions to the warrant").  Defendant is not entitled to relief on the basis of his third claim.

(Ex. H, pp. 75-78) (alterations in original) (footnotes omitted).  The First DCA per curiam affirmed on October 15, 2010, without a written opinion.  *Kennedy v. State*, 49 So. 3d 750 (Fla. 1st DCA 2010) (Table) (*see* Ex. I).

The state court's factual findings are amply supported by the record and are presumed correct.  Petitioner has not rebutted those findings with clear and convincing evidence to the contrary.  Based on the state court's findings, it was not unreasonable for the court to conclude that petitioner cannot establish counsel was ineffective, because the record demonstrates a suppression motion on petitioner's proffered basis would not have succeeded.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83, 91 L. Ed. 2d 305 (1986) (holding that for a

defendant to prevail on an ineffective assistance claim where counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must establish deficient performance and prejudice under *Strickland*, and "must also prove that his Fourth Amendment claim is meritorious. . . ." (*citing Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068)); *see also Freeman v. Attorney Gen.*, *Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (stating that counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state court's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Seven.

| Ground Eight | "Trial Counsel's Failure To File A Timely And [A]dequate Motion For Disqualification And/Or Recusal Of Circuit Court Judge Jan Shackleford From Presiding Over The Trial, Where Counsel Knew Or Was Certainly Supposed To Know That Circuit Court Judge Jan Shackleford Presiding, Would Constitute A Blatant 'Breach Of Judicial Neutrality', Which Resulted In Petitioner Being deprived Of A Fair And Impartial Trial Before A Neutral Judge." (Doc. 13, p. 21). |

Petitioner claims trial counsel was ineffective for failing to file a timely and adequate motion to disqualify the trial judge. Petitioner asserts he exhausted this

claim by raising it in his second amended Rule 3.850 motion and appealing the denial thereof to the First DCA. (*Id.*). Respondent asserts that petitioner is not entitled to relief, because the state court's rejection of his claim is consistent with clearly established federal law. (Doc. 27, pp. 25-26).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel claims is the *Strickland* standard, discussed above.

B.    Federal Review of State Court Decision

Petitioner raised this claim as "Ground/Issue (4)" in his second amended Rule 3.850 motion filed on March 1, 2010. (Ex. H, pp. 60-62). The state court denied relief without an evidentiary hearing in its written order filed April 20, 2010. The court's order discussed the two-pronged test for ineffective assistance of counsel claims articulated in *Strickland v. Washington*, and explained why petitioner's allegations failed to meet that standard, as follows:

> In his fourth ground, Defendant asserts that his counsel was ineffective for failing to file a "timely and adequate" motion for disqualification. Defendant alleges that the Court "assisted" law enforcement by allowing the confidential informant in this case, Donnie Sorrells, to be released from jail to work with the FDLE as a confidential informant. Defendant acknowledges the likelihood that the Court did not know that Defendant was the intended target of the FDLE investigation, however, he concludes that for the Court to thereafter preside over the trial against the defendant, a trial . . . which she made possible by releasing the C.I. from jail for the purpose of working with the FDLE to 'apprehend' the defendant, clearly constitutes a 'breach of judicial neutrality,' resulting in the defendant being denied of his constitutional rights to a fair and and [sic] impartial trial before a neutral judge.'

> Counsel filed a motion to disqualify based on these grounds as enumerated by Defendant.  The motion was denied by the Court as both untimely and legally insufficient.  Defendant has added no facts in the instant motion which would have been relevant to the Court's decision.  Consequently, even if the motion had been timely filed, the results would not have been different, and Defendant has failed to demonstrate prejudice.  He is not entitled to relief on this basis.

(Ex. H, p. 78) (footnotes omitted).  The First DCA per curiam affirmed on October 15, 2010, without a written opinion.  *Kennedy v. State*, 49 So. 3d 750 (Fla. 1st DCA 2010) (Table) (*see* Ex. I).

Again, the court has carefully reviewed the state court record, including the attachments to the circuit court's order.  The state court's factual findings are amply supported by the record and are presumed correct.  Petitioner has not rebutted those findings with clear and convincing evidence to the contrary.  Based on the state court's findings, it was not unreasonable for the court to conclude that petitioner failed to establish deficient performance with regard to the motion to disqualify, and that petitioner further failed to establish a reasonable probability of success on the disqualification motion had the motion included petitioner's proffered facts.

The state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court.  Petitioner is not entitled to federal habeas relief on Ground Eight.

Ground Nine          "Trial counsel's Failure To Make A Timely Objection And Timely Motion For Dismissal Of The Invalid Felony Information Filed In The Court Charging The Petitioner With Commission Of The Aforementioned Offenses, Depriving The Petitioner Of Effective Assistance Of Counsel."  (Doc. 13, p. 23).

Petitioner claims trial counsel was ineffective for failing to move to dismiss the

information, which petitioner claims was defective because it was based on a probable cause affidavit rather than sworn testimony. (Doc. 13, p. 23). Petitioner asserts he exhausted this claim by raising it in his second amended Rule 3.850 motion and appealing the denial thereof to the First DCA. (*Id*.). Respondent asserts that petitioner is not entitled to relief, because the state court's rejection of his claim is consistent with clearly established federal law. (Doc. 27, pp. 26-27).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel claims is the *Strickland* standard, discussed above.

B.    Federal Review of State Court Decision

Petitioner raised this claim as "Ground/Issue (5)" in his second amended Rule 3.850 motion filed on March 1, 2010. (Ex. H, pp. 63-68). The state court denied relief without an evidentiary hearing in its April 20, 2010 order. After discussing the *Strickland* standard, the court explained why petitioner's allegations failed to meet that standard, as follows:

> In his final claim, Defendant claims counsel was ineffective for failing to make a timely objection and motion for dismissal of the information based on the alleged failure of the Office of the State Attorney to receive "sworn testimony that had been given under the penalty of perjury oath by the material witness(es) for the charged offenses 'before' certifying, signing, and filing the felony information in the court against the Defendant." As a result of counsel's alleged error, Defendant asserts that he has been "convicted, adjudicated, and currently imprisoned pursuant to an 'invalid' felony information . . .". This claim lacks merit. See Simon v. State, 997 So. 2d 490, 491 (Fla. 4th DCA 2008) ("In his first claim, appellant asserts that his attorney was ineffective and that his conviction is void because the information charging him with in this case was allegedly not based on sworn testimony. This claim is without merit as a matter of law"). Defendant

is not entitled to relief on this basis.

(Ex. H, pp. 78-79).  The First DCA per curiam affirmed on October 15, 2010, without a written opinion.  *Kennedy v. State*, 49 So. 3d 750 (Fla. 1st DCA 2010) (Table) (*see* Ex. I).

The state courts have already answered the question of how the issue would have been resolved under Florida law had defense counsel challenged the information on petitioner's proposed basis – the motion would have been denied.  "[F]ederal habeas courts should not second-guess [the state court] on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir.2005) (quotation marks omitted). Because this court will not "second guess" the Florida state courts' conclusion that the information met the requirements of Florida law, petitioner cannot demonstrate his counsel was deficient for failing to move to dismiss the information.  *See id*; *see also Freeman v. Attorney Gen*., 536 F.3d 1225, 1233 (11th Cir. 2008) (holding that a lawyer cannot be deficient for failing to raise a meritless claim).  Further, the state courts' conclusion that petitioner's proposed challenge to the information would have failed shows that the counsel's failure to challenge the information on petitioner's proposed basis caused no prejudice.

To confirm what the state court concluded, Florida Statute § 923.03(2) requires that any indictment or information contain a sworn oath of the state attorney certifying that "the allegations as set forth in the foregoing information are based upon facts that have been sworn to as true and which, if true, would constitute the offense therein charged." Fla. Stat. § 923.03(2) (2007).  The sworn charging affidavit of the arresting officer is sufficient for a prosecutor to premise the filing of an information.  *See State v. Perkins*, 977 So. 2d 643, 646 (Fla. 5th DCA 2008) (holding

that the assistant state attorney signing the information charging a felony does not have to personally administer the oath and question the material witness or witnesses upon which the charges are based, but simply receive and consider the sworn testimony); *State v. Hartung*, 543 So. 2d 236 (Fla. 5th DCA 1989) (holding that a material witness' sworn testimony documented in the form of an affidavit and received by the assistant state attorney may form the basis of the state attorney's certification on the information).

To prevail on his claim, petitioner would have to show that the assistant state attorney did not receive sworn testimony from a material witness before commencing the prosecution, and that defense counsel knew the prosecutor had not received such testimony.  There is no indication in the record that such testimony was not received, and petitioner does not assert that his trial counsel was aware of the alleged deficiency.  *See, e.g., Sairras v. Fla. Dep't of Corr.*, 496 F. App'x 28, 33 (11th Cir. 2012) (rejecting identical habeas claim, explaining:  "[W]e conclude from the record that the state court's adjudication of this claim was reasonable because Sairras did not meet his burden of showing that his counsel's performance was deficient.  To establish that his counsel was ineffective in this regard, Sairras would have to show that the state did not receive sworn testimony from a material witness before commencing the prosecution, and that his counsel knew that the state had not received such testimony.  However, there is no indication in the record that such testimony was not received, and Sairras does not assert that his trial counsel was aware of the alleged deficiency."); *see also, e.g., Nix v. McDonough*, No. 4:05cv244/MP/MD, 2006 WL 2927475, at *8 (N.D. Fla. May 12, 2006) (rejecting identical claim); *Farmer v. Sec'y, DOC*, No. 3:09cv1128-J-37JBT, 2012 WL 2060842, at *9-*10 (M.D. Fla. June 7, 2012) (rejecting identical claim because the

prosecutor's sworn oath on the information that he received testimony under oath from the material witness or witnesses was sufficient under Florida law).

The state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Nine.

Ground Ten    "Trial Counsel Was Ineffective For Ignoring Rule 3.171(c)(1), Thus Depriving The Petitioner Of His 6th and 14th Amendment Of The United States Constitutions [sic]." (Doc. 13, p. 24).

Petitioner claims trial counsel was ineffective with regard to petitioner's no contest pleas in Case Nos. 08-108, 08-109, 08-111 and 08-112. (Doc. 13, p. 24). Petitioner asserts he exhausted this claim by raising it as Ground Two of his amended Rule 3.850 motion and by appealing the denial thereof to the First DCA. (*Id*.). Respondent asserts that petitioner is not entitled to relief, because the state court's rejection of his claim is consistent with clearly established federal law. (Doc. 27, pp. 27-28).

A.    Clearly Established Federal Law

In determining the validity of a plea to a criminal charge, a plea of nolo contendere stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 129, 71 L. Ed. 347 (1926); *see also Florida v. Royer*, 460 U.S. 491, 495 n.5, 103 S. Ct. 1319, 1323 n.5, 75 L. Ed. 2d 229 (1983) (recognizing that "[u]nder Florida law, a plea of *nolo contendere* is equivalent to a plea of guilty."). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (citing *Brady*

*v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)).

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* at 748.  Accordingly, in the context of a guilty plea the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. 160; *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).  The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding.  *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970).

Once a guilty plea has been entered by a criminal defendant, all non-jurisdictional defects in the proceedings prior to the plea are waived, including all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).  As the Supreme Court summarized:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973)

(*referencing McMann v. Richardson, supra*); *see also  Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

When a petitioner challenges the voluntariness of his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington, supra*, applies.  *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 737-38, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain).  In a plea situation, the focus of *Strickland*'s performance prong is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill*, 474 U.S. at 56-57 *(quoting McMann v. Richardson*, 397 U.S. at 771, 90 S. Ct. 1441).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689.  Representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused regarding the plea. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*citing McMann*, 397 U.S. at 774; *Tollett*, 411 U.S. at 267, *Hill*, 474 U.S. at 56).

To meet *Strickland*'s prejudice prong in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the

proceeding." *Strickland*, 466 U.S. at 693.  Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  *Id.*, 474 U.S. at 58-59.

    B.    Federal Review of State Court Decision

Petitioner raised this claim as "Ground Two" of his amended Rule 3.850 motion dated April 5, 2010.  (Ex. J, pp. 41-42).  On February 14, 2011, the circuit court entered an order denying relief, finding the claim without merit, as follows:

> Defendant asserts that his counsel "ignored" Florida Rule of Criminal Procedure 3.171(c)(1), by "encouraging and convincing the defendant that it would be in defendant's best interest to enter the plea oppose (sic) to leaving such decision up to the defendant as to whether he should enter a plea."  Defendant states that, were it not for counsel's deficient performance, he would have declined to enter his pleas and would have proceeded to trial.
>
>     . . . .
>
>     With regard to Defendant's second claim, Defendant fails to state any specific act of counsel which caused his will to be overborne in choosing whether to enter his plea.  The record does not support Defendant's allegations.  When the Court inquired as to whether anyone was forcing him or threatening him to enter his plea, Defendant replied, "no, ma'am."  Further, when Defendant suggested that he was just "going along with what is going on,"' he was given ample opportunity to explain himself and was informed by the Court that he would not be forced to enter a plea if he did not wish to do so.  Defendant is not entitled to relief on the basis of his second claim.

(Ex. K, pp. 113-114).  The First DCA per curiam affirmed on May 19, 2011, without a written opinion.  *Kennedy v. State*, 66 So. 3d 943 (Fla. 1st DCA 2011) (Table) (*see* Ex. L).

The court has carefully reviewed the state court record, including the transcript of petitioner's plea colloquy.  The state court's factual findings are amply supported

by the record and are presumed correct.  Petitioner has not rebutted those findings with clear and convincing evidence to the contrary.  As the state court found, petitioner's claim did not identify any particular way counsel allegedly overbore petitioner's will, nor did petitioner's claim identify anything counsel did that was objectively unreasonable in urging petitioner to take a plea.  Further, the transcript of petitioner's plea colloquy conclusively refutes petitioner's vague assertion that counsel coerced or improperly "convinced" him to plead no contest.  Based on the state court's findings, it was not unreasonable for the court to conclude that petitioner failed to establish his plea was unknowing or involuntary due to counsel's coercion.

The state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of clearly established federal law, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court.  Petitioner is not entitled to federal habeas relief on Ground Ten.

Ground Eleven        "The Trial Court Committed Fundamental Error In Sentencing The Petitioner Under An Unconstitutional Statute §893.13 F.S., Pursuant To Shelton v. Secretary, Department of Corrections, 23 Fla. L. Weekly Fed. D11, — F.Supp.2d —, 2011 WL 3236040 (M.D. Fla. July 27, 2011)."  (Doc. 13, p. 25).

Petitioner claims he is entitled to relief under *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp.2d 1289 (M.D. Fla. 2011).  (Doc. 13, p. 25).  Petitioner asserts he exhausted this claim by raising it in his motion to correct illegal sentence filed under Fla. R. Crim. P. 3.800(a).  (*Id.*).  Respondent assert petitioner is not entitled to relief, because the Eleventh Circuit has rejected it.  (Doc. 27, p. 27 (*citing Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012))).

Petitioner raised this claim in his Rule 3.800(a) motion filed on September 14, 2011.  (Ex. P).  The state circuit court denied the motion on October 4, 2011, on the

grounds that the federal district court's decision in *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp.2d 1289 (M.D. Fla. 2011), was not binding on Florida state courts, and that *stare decisis* dictated that the decision of the Florida appellate courts rejecting petitioner's argument was binding on the court and required rejection of petitioner's claim. (Ex. Q). The First DCA per curiam affirmed on February 7, 2012, without a written opinion. *Kennedy v. State*, 93 So. 3d 1017 (Fla. 1st DCA 2012) (Table) (*see* Ex. R).

Resolution of petitioner's claim that the state court violated clearly established federal law when it rejected his challenge to the constitutionality of Fla. Stat. § 893.13 (on the grounds articulated by the federal district court in *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp.2d 1289 (M.D. Fla. 2011)), is controlled by the Eleventh Circuit's opinion in *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1856 (2013). In *Shelton*, the Eleventh Circuit reversed the district court's decision in *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp.2d 1289 (M.D. Fla. 2011). The district court in *Shelton* had determined that Fla. Stat. § 893.101 was facially unconstitutional because (1) its penalties are too harsh to allow omission of a *mens rea* requirement, (2) violations lead to substantial social stigma and so *mens rea* is required, and (3) it reaches inherently innocent conduct without a *mens rea* component. *Shelton*, 802 F. Supp.2d 1289 (M.D. Fla. 2011). On appeal, the Eleventh Circuit found that the district court failed to give the proper deference under the AEDPA to the state courts' adjudication of the issue. The Eleventh Circuit held:

> As it turns out, a fine-grained parsing of Supreme Court precedents is unnecessary to resolve our constricted inquiry. One very general principle can be distilled from the Court's cases in this area: legislatures have "wide latitude . . . to declare an offense and to exclude

elements of knowledge and diligence from its definition," but they still must "act within any applicable constitutional constraints" when defining the elements of a criminal offense. The Court has not drawn lines around this principle sufficient to dictate a particular result of the Florida court here, especially considering that Florida's elimination of *mens rea* was only partial. The Supreme Court has acknowledged that its work in this area has only just begun, noting twice that no court "'has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not.'" Absent a Supreme Court case directly on point or a case so closely analogous that fairminded jurists would agree that its rule must extend to the present scenario, the Court's acknowledgment of uncertainty in this key principle effectively answers the AEDPA inquiry in Florida's favor.

. . . .

[AEDPA'S narrow] inquiry leads us to conclude that nothing in the *U.S. Reports* decides or implies resolution of the novel issue of the Florida Act's constitutionality, and we cannot find Florida's adjudication to be unreasonable under AEDPA.

*Shelton*, 691 F.3d at 1354-55 (footnotes omitted). Petitioner cannot demonstrate that the state courts' rejection of his due process challenge to Fla. Stat. § 893.101, at the time it was made, was contrary to or an unreasonable application of clearly established United States Supreme Court precedent. Accordingly petitioner is not entitled to federal habeas relief on Ground Eleven. *See, e.g., Cotton v. Crew*s, No. 3:12cv550/MCR/CJK, 2014 WL 84084 (N.D. Fla. Jan. 9, 2014)(rejecting identical claim); *Williams v. Tucker*, No. 5:12cv108/RS/EMT, 2012 WL 6059295 (N.D. Fla. Nov. 13, 2012) (same); *Johnson v. Tucker*, No. 4:11cv202/MP/CAS, 2012 WL 4369775 (N.D. Fla. Sept. 25, 2012) (Rodgers, C.J.) (same).

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the amended petition for writ of habeas corpus (doc. 13), challenging the judgment of conviction and sentences in *State of Florida v. Ervin Kenndey, III*, Escambia County, Florida Circuit Court Case Numbers 07-3971, 08-108, 08-109, 08-111 and 08-112, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 18th day of March, 2014.

*/s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).